Hough, J.
The court of appeals found as follows:
“At the time the defendants, Stringers, executed and delivered the lease to the defendants, Rochester, Mullen and Maloney, viz-, April 6, 1920, the said defendants, Rochester, Mullen and Maloney, were the purchasers thereof in good faith and without the knowledge upon their part of the existence of the prior lease, now owned by the plaintiffs. * * *
“All questions concerning the abandonment or forfeiture by plaintiffs of their lease, as well as the issues between the plaintiffs and the defendants, Stringers, are not determined by the court.”
From the language above quoted, it becomes apparent that the court of appeals rested its judgment *260 entirely upon its finding that Rochester, Mullen and Maloney had entered into the subsequent lease, which they filed for record, without notice of the existence of the former lease.
From the examination which we have made of the record we are not able to coincide with the conclusion reached by the court of appeals. The Stringer answer admits that that group of defendants had full knowledge of the prior lease executed and delivered to Williams & Yorhes, who were assignors to the plaintiffs.
The Rochester group of defendants admit in their answer that they saw a copy of the prior lease, but assert they were advised and knew that said lease had expired, that the conditions thereof had not been complied with, and that the lease was not valid or binding. • Upon their application the court of appeals permitted this admission to be stricken out of their answer. An examination of the testimony, however, discloses that this admission was a conceded fact in the case. In order to show this beyond peradventure let us quote extracts from the testimony of Mr. Rochester:
“Q. After you had talked with Mr. Maloney you then did more perhaps than any of the other three toward perfecting the lease? A. Yes, sir.”
A further answer by Mr. Rochester:
“I says, ‘I am very anxious to get that [the lease], Mr. Stringer, and if I would write up a lease could we arrange to have it signed up immediately so we could get started?’ I says, ‘Of course you realize with a small acreage like that you would not be justified in opening that unless prices were very good and there is a demand for coal.’ So he *261 couldn’t go then, but on the following Saturday he agreed to go to Cadiz, that is where his original lease was on file with his attorney, and Mr. Mullen and myself took him up there and he asked his attorney for the old lease and said he was going to lease it again, and there were certain things in there they had worked out for the other people and he wanted them the same in our lease and he wanted to be sure they were the same to protect himself, and we sat down in Mr. McNamee’s office and got the lease from his files and proceeded to read it. The first details as far as to dates and description of the land and all that had no bearing on the case. We just passed that over, but we made a change in the royalty and he says ‘I want to increase that royalty from 12 cents to 12% cents.’ And the second change, that you must at all times provide coal for residents of Adena if they want it- * * * The other change was that we start operations in not less than four months from the date of the lease, and furnish the residents of Adena with coal. Well, we made our changes. We had the old lease and the change we wanted to make we made on another sheet all prepared and marked on the old lease what should be inserted and cut out. It was presented to Mr. McNamee, and we went there with it right away on Saturday afternoon, and he and his stenographer were busy, and I attempted to write it up myself, but I didn’t have the proper equipment there, so I asked if it would be satisfactory to take the lease with us, and Sunday being the next day I would write it up. I took it down, and Mr. Mullen has a typewriter, and went to his house and wrote up this lease, and like I say, as far as the description of *262 land and all that remained the same. We inserted the other changes- and presented the lease to Mr. Stringer. He took it to his attorney and evidently his attorney passed favorably upon it for he signed it and took it to the other people who lived around there and brought it back to us and went to a notary up there with Mr. Stringer and signed the lease up.”
The following was brought out under cross-examination :
“Q. And you two were representing you three? A. Yes, sir.
“Q. When you got to Mr. McNamee’s, office, Mr. Stringer asked for the other lease upon his property, the original lease? A. That is it.
“Q. And Mr. McNamee procured that lease.from his files and Mr. McNamee then read the lease to you men, didn’t he? A. That is it.
“Q. And you heard it read, didn’t you? A. Yes, sir.
“Q. And Mr. Mullen was then present? A. Yes, sir.
“Q. After that lease was all read to you, then Mr. Stringer suggested changes in that lease to be made in the lease he was about to give to you? A. Yes, sir.
“Q. And after that you had that same old lease in your possession and took it to Adena Saturday night and kept it over Sunday. Did you see Mr. Mullen, Sunday? A. Yes, sir.
“Q. And then you proceeded to draw up another lease from this lease which Mr. Eiley holds? A. Yes, sir.”
*263 From the above extracts of the testimony, as well as further admissions on the part of the Eochester group, the conclusion cannot be avoided that Eochester and his confreres had actual notice of the existence of the prior lease, and that the finding of the court of appeals in this respect is contrary to and inconsistent with the conceded and undisputed facts appearing upon the face of the record in this particular. And, further, it cannot be said that these parties are afforded any protection under the provisions of Section 8543, General Code. While they may have believed the former lease to be can-celled or void, and in that respect that they were bona fide purchasers, yet it does not appear that they had “no knowledge of the existence of such former * * * instrument.”
What conclusion they may have arrived at as to the legal effect of the former lease is entirely beside the point. They certainly had knowledge of the fact of its existence and they therefore do not come within the purview of the protective provision of above section.
The issuable facts presented by the pleadings and the evidence upon the question of abandonment and forfeiture of the prior lease were not passed upon by the court; but should have been passed upon and determined.
The finding of the court of appeals, upon the question of notice was erroneous, and of course constituted error prejudicial to the rights of the parties herein. Following the precedent recently established by this court in the case of Stoltz v. Carroll, Admx., 99 Ohio St., 289, the judgment of the court of appeals is reversed; and, inasmuch as there are *264 questions made in the record which were not passed upon or decided by that court, the same is remanded to the court of appeals of Jefferson county for further proceedings according to law.

Judgment reversed.

Marshall, C. J., Johnson, Wanamaker, Robinson, Jones and Matthias, JJ., concur.